UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **VERSAH, LLC**, and **HUWAIS IP HOLDING LLC**, <br><br> Plaintiff, <br><br> v. <br><br> **UL AMIN INDUSTRIES**, and **HAMMAD ASHIQ**, <br><br> Defendant. | 2:20-cv-12657-TGB-RSW <br><br> HON. TERRENCE G. BERG <br><br> **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND OTHER RELIEF (ECF. 4)** |

Plaintiffs Versah, LLC and Huwais IP Holding LLC, the owner of the trademarks and exclusive license of Densah® Burs Kits, medical devices used during oral surgery to prepare bone for the insertion of dental implants, are seeking a temporary restraining order against Defendants, whom they allege are engaged in manufacturing, distributing, or selling counterfeit Densah® Burs Kits. *See* ECF No. 1, PageID.13. In a Complaint filed together with their motion seeking injunctive relief, Plaintiffs allege that Defendants' actions constitute: (1) copyright infringement under the Copyright Act; (2) trademark infringement and counterfeiting under § 32 of the Lanham Act; (3) unfair competition and false designation of origin under § 43(a) of the Lanham Act; (4) unfair competition and false designation of origin

1

under § 43(a) of the Lanham Act for trade dress; and (5) unfair competition under Michigan Compiled Laws § 445.903.

Before the Court is Plaintiffs' motion under Federal Rule of Civil Procedure 65(b) for a preliminary injunction, temporary restraining order, asset restraining order, expedited discovery order, and order permitting service by alternative means, filed on September 29, 2020. The Court held an ex parte hearing on this matter on October 6, 2020. Plaintiffs submitted supporting materials the Court had requested on October 8, 2020.

Having reviewed the pleadings, supporting affidavits, and other records submitted in support of the motion, and carefully considered the arguments made at the ex parte hearing, the Court will **DENY** Plaintiffs' motion with regard to the temporary restraining order, asset restraining order, expedited discovery order, but will **GRANT** service by alternative means. The Court will also order that the record in this case shall be unsealed.

## LEGAL STANDARD

Plaintiffs have filed this motion pursuant to Federal Rule of Civil Procedure 65, requesting that the Court grant a temporary restraining order and other relief without notice. Under Federal Rule of Civil Procedure 65(b), the court may issue a temporary restraining order without notice to the adverse party if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b). "The Supreme Court has stated that the Rule 65(b) restrictions 'on the availability of Ex parte temporary restraining orders reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute.'" *Reed v. Cleveland Bd. of Educ.*, 581 F.2d 570, 573 (6th Cir.1978) (quoting *Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 439, (1974)). As such, an ex parte temporary restraining order is "only appropriate where the applicant would face irreparable harm so immediate that it would be improper to wait until after a preliminary injunction hearing to enjoin the non-movant's conduct." *Erad v. Johnson*, 905 F.Supp.2d 782, 791 (E.D. Mich. 2012).

As described in Federal Rule of Civil Procedure 65(b), there are two circumstances which would justify the Court proceeding ex parte: (1) where notice to the adverse party is impossible, and (2) in more limited circumstances, where "notice to the defendant would render fruitless further prosecution of the action." *First Tech. Safety Sys., Inc. v. Depinet*, 11 F.3d 641, 650 (6th Cir. 1993). "In order to justify

proceeding ex parte because notice would render further action fruitless, the applicant must do more than assert that the adverse party would dispose of evidence if given notice." *Id.* Instead, a party trying to proceed ex parte "must support such assertions by showing that the adverse party has a history of disposing of evidence or violating court orders or that persons similar to the adverse party have such a history." *First Technology*, 11 F.3d at 651.

## EX PARTE TEMPORARY RESTRAINING ORDER

Plaintiffs claim that an ex parte temporary restraining order is necessary because if Defendants were provided notice of the complaint, "they would likely cancel accounts, dispose of or hide their business records, transfer or otherwise dispose of assets obtained as a result of their counterfeiting activities, and move the locations of their counterfeiting operations." ECF No. 4, PageID.109. During the hearing Plaintiffs provided a detailed presentation to the Court consisting of 85 slides. ECF No. 9-2. To support the assertion that ex parte relief was necessary, Plaintiffs utilized maps to describe the geographic region and close proximity of multiple manufacturing sites where they believe the counterfeit kits are being produced (ECF No. 9-2, PageID.138), described how Plaintiffs had purchased a counterfeit kit (ECF No. 9-2, PaeID.168), showed records containing inconsistent addresses for Defendant Ul Amin (ECF No. 9-2, PageID.190), explained the lack of FDA-compliant packaging and labeling on the Ul Amin products (ECF

4

No. 9-2, PageID.176), and provided an email from a dentist who inquired as to whether the allegedly counterfeit kit was the same as the one produced by Versah (ECF No. 9-2, PageID.181). Additionally, Plaintiffs provided testimony of Todd Marshall, the Chief Operating Office of Versah. Mr. Marshall described Plaintiffs' efforts over the last five years to shut down the sites of counterfeit sellers on various online marketplaces such as eBay. Mr. Marshall also described the defects he observed in the drill bits from the kit purchased from Ul Amin and the potential harm to patients that might occur if these products were used. *See* ECF No. 9-2, PageID.173, 174. The Court directed Plaintiffs to submit the slide presentation and an explanatory affidavit by Mr. Marshall, which together largely summarize the evidence presented during the hearing. *See* ECF No. 9.

While this evidence generally supports the claims in Plaintiff's complaint, it does not demonstrate that Defendants would destroy evidence or move assets if they received notice of the action. For example, Plaintiffs admitted they had no direct evidence that Ul Amin would destroy evidence nor had they previously seen Defendants attempt to hide assets. In fact, a law firm representing Plaintiffs in matters of intellectual property successfully contacted Hammad Ashiq via email in April of 2019 to demand that Ul Amin cease and desist all sales of its Osseodensification Bur Kits. ECF No. 9-2, PageID.186. Rather than disappear, Mr. Ashiq responded to the message, denied the

5

accusations of copyright infringement and requested Plaintiffs or Plaintiffs' attorneys to brief Ul Amin on the alleged infringement because Defendants were "willing to workout things positively" if the objection to the product made sense. *Id.* at PageID.187. Plaintiffs additionally admitted that they have received follow up communications from the email address associated with Mr. Ashiq. Despite having been notified of potential copyright claims in 2019, Mr. Ashiq does not appear to have changed his email address, removed the website selling the alleged counterfeit product, or hidden any assets in response to the cease and desist letter. The Court also notes that the affidavit of Mr. Marshall at times relies on "suspicion" rather than particularized facts in explaining why ex parte relief is necessary. ECF No. 9-1, PageID.148.

While the evidence supports Plaintiffs' justifiable concerns regarding the apparent defects and potential health risks associated with the Ul Amin kits, these are questions that must be tested by the adversarial process. To obtain ex parte relief, there must be evidence demonstrating that Defendant is likely to conceal evidence or hide assets. *See First Technology*, 11 F.3d at 652 ("Plaintiff's assertion that defendants would conceal evidence if given notice because defendants allegedly misappropriated trade secrets and infringed plaintiff's copyrights is insufficient to establish that notice to the defendants would have rendered fruitless further prosecution of the action.").

Similarly, the lack of FDA-compliant labeling does not support Plaintiffs' concerns regarding destruction of evidence. Even Mr. Marshall noted that during his time supervising Plaintiffs' attempts to takedown accounts selling counterfeit kits on online marketplace, he had not seen any new Ul Amin kits pop-up under different accounts after a user was reported and removed.

The case law cited by Plaintiffs arises from distinguishable circumstances. For example, Plaintiffs cite to *Lorillard Tobacco Co. v. Amana Oil, Inc.*, where the plaintiff's ex parte seizure order and TRO were granted because there was sufficient evidence to find that the defendant "may destroy, move, [or] hide" counterfeit merchandise. No. 2-10-cv-13296, ECF. No. 8 (E.D. Mich. Aug. 23, 2010). But in *Lorrilard*, the plaintiff had filed more than 200 counterfeit cases and there had been numerous instances of "defaults, the hiding of counterfeit inventory, failure to respond to discovery, failure to appear at depositions, violations of restraints, and breaches of settlement agreements." No. 2-10-cv-13296, ECF No. 3, PageID.162. Similarly, in *North Atlantic Operating Co. Inc. v. Dmitriy Babenko*, this Court granted an ex parte TRO because the plaintiff provided evidence that the defendant became evasive when the plaintiff's undercover investigators sought to arrange an in-person transaction and the plaintiff's reputation was being harmed by several public negative reviews from customers who purchased the counterfeit products. No. 4-

7

15-cv-14013, ECF No. 4, PageID.137, 142. This is the first time Plaintiffs have attempted to seek relief through legal proceedings so there is no evidence of previous behavior in response to complaints or injunctions. Plaintiffs also only provide evidence of one potential customer who was confused as to whether the alleged counterfeit kit was the same as the Versah Osseodensification Burs. ECF No. 9-2, PageID.181.

Parties seeking ex parte relief must do more than allege that the adverse party *could* destroy evidence. *First Technology*, 11 F.3d at 651 ("Showing that the adverse party would have the opportunity to conceal evidence is insufficient to justify proceeding ex parte. If it were, courts would be bombarded with such requests in every action filed. The applicant must show that the adverse party is likely to take the opportunity for such deceptive conduct."). Because Plaintiffs have failed to present sufficient evidence that providing notice to Defendants "would render fruitless further prosecution," the ex parte TRO must be denied. *Id.* at 650.

The Court is mindful that the allegations contained in Plaintiffs' complaint are serious and, if true, Defendants' alleged conduct could result in damage to Plaintiffs. While the present record does not justify granting such relief without reasonable notice to Defendants, this order does not prevent Plaintiffs from seeking relief from the Court if new evidence or circumstances arise.

## ALTERNATIVE SERVICE

Plaintiffs also request that the Court allow alternative service through e-mail. Federal Rule of Civil Procedure 4(f) provides three methods for service of defendants in foreign countries:

(1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;

(2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:

    (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;

    (B) as the foreign authority directs in response to a letter rogatory or letter of request; or

    (C) unless prohibited by the foreign country's law, by:

        (i) delivering a copy of the summons and of the complaint to the individual personally; or

        (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or

(3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f). "'The Sixth Circuit has not addressed whether there is a hierarchy or preference among Rule 4(f)'s methods of service.' But in a published decision, a district court within the Sixth Circuit agreed that 'Rule 4(f)(3) is neither a last resort nor extraordinary relief. It is merely one means among several which enables service of process on an international defendant.'" *Gamboa v. Ford Motor Co.*, 414 F.Supp.3d 1035, 1039 (E.D. Mich. 2019) (quoting *Slay v. IB Travelin, Inc.*, 2019 WL 572877, at *2 (W.D. Tenn. Feb. 12, 2019; *Lexmark Int'l, Inc. v. Ink Techs. Printer Supplies, LLC*, 291 F.R.D. 172, 174 (S.D. Ohio 2013)). However, "even if Rule 4(f) does not establish a preferred method of service among its options, many courts do require, as a factor in weighing whether to exercise its discretion and allow substituted service, a showing that reasonable efforts to serve the defendant have already been made, and that the Court's intervention will avoid further burdensome or futile attempts at service." *Id.* at 1040 (quoting *Phoenix Process Equip. Co. v. Capital Equip. & Trading Corp.*, 250 F.Supp.3d 296, 306-07 (W.D. Ky. 2017)). District courts are afforded "wide discretion" to order service under Rule 4(f)(3) as long as the method of service is not prohibited by international agreement and it comports with due process. *BBK Tobacco & Foods, LLP v. Gooshelly*, 2020 WL 2315879, at *2 (E.D. Mich. 2020) (quoting *U.S. Commodity Futures Trading Comm'n v. Majestic Enters. Collision Repair, Inc.*, 2011 WL 767890, at *3 (N.D. Ohio Feb. 28, 2011).

Pakistan and the United States are both signatories to the Hague Convention, which applies to the service of civil judicial documents abroad. *BP Products North America, Inc. v. Dagra*, 236 F.R.D. 270, 271 (E.D. Va. 2006) (noting "[T]he Hague Convention does not apply when a defendant's address is unknown."). Plaintiffs have not attempted to serve Defendant under the Hague Convention, and instead are seeking to serve the company via email under Rule 4(f)(3) because the exact address of Defendant is unknown. Plaintiffs are correct that previous courts have found that service by email does not violate the Hague Convention and that Sixth Circuit courts have permitted service by email in cases where Defendants have conducted business online. *Liberty Media Holdings, LLC v. Marione*, 2010 WL 1154316 (E.D. Mich. 2010); *Gamboa*, 414 F.Supp.3d at 1042; *BBK Tobacco & Foods, LLP*, 2020 WL 2315879, at *2.

As support for alternative service, Plaintiffs have established that there is no physical address on the website where the alleged counterfeit product is sold and the addresses on the product packaging and receipts are inconsistent and unreliable. ECF No. 4, PageID.122. Plaintiffs have also established that Defendants utilize email addresses associated with the website and product at issue in order to communicate about business. Because the physical address of Defendants is unknown and Plaintiffs have successfully communicated with Defendants through e-mails, the Court concludes that service of process by email would be the most

11

effective way to ensure Defendants receive notice of the claims against them.

Therefore, the Court will permit alternative service through the email addresses provided in Plaintiffs' motion. ECF No. 4, PageID.123. Since Federal Rule of Civil Procedure 4(l)(2) requires proof of service completed abroad, the Court will require Plaintiff to utilize a read-receipt or email service company that can confirm receipt of the service emails. *Liberty Media Holdings, LLC*, 2010 WL 11545316 at *4.

## CONCLUSION

It is hereby **ORDERED** that Plaintiffs' Motion for an Ex Parte Temporary Restraining Order (ECF No. 4) is **DENIED** without prejudice;

It is further **ORDERED** that Plaintiffs may effectuate service on Defendants by sending a copy of the complaint and summons via email to "hammadashiq@hotmail.com" and "info@ulamin.com", using the read-receipt function or an email service company that will supply proof of service. Plaintiffs are directed to file a proof of service with the Court;

It is further **ORDERED** that Plaintiffs' attorney shall include a copy of this Order when effectuating service upon Defendants within seven (7) days of the date of this Order;

It is further **ORDERED** that, upon successful completion of service of process, the parties shall immediately contact the Court to schedule a

hearing date on Plaintiffs' Motion for Preliminary Injunction (ECF No. 4);

**WHEREFORE**, for the reasons set forth herein, the Court does hereby direct the Clerk that pleadings and record in this matter shall be **UNSEALED**.

**SO ORDERED**.

Dated: October 22, 2020        s/Terrence G. Berg
                               TERRENCE G. BERG
                               UNITED STATES DISTRICT JUDGE