UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **VERSAH, LLC**, and **HUWAIS IP HOLDING LLC**,<br><br>Plaintiffs,<br><br>v.<br><br>**UL AMIN INDUSTRIES**, and **HAMMAD ASHIQ**,<br><br>Defendants. | 2:20-cv-12657-TGB-RSW<br><br>HON. TERRENCE G. BERG<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION (ECF NO. 4)** |

In this copyright and trademark case, Plaintiffs Versah, LLC and Huwais IP Holding LLC, the owner of the trademarks and exclusive license of Densah® Bur Kits, medical devices used during oral surgery to prepare bone for the insertion of dental implants, are suing Defendants for manufacturing, distributing, or selling counterfeit bur kits. *See* ECF No. 1, PageID.13.

Currently pending before the Court is Plaintiffs' motion under Federal Rule of Civil Procedure 65(a) for a preliminary injunction prohibiting Defendant from using Versah's name, trademarks, or copyrights and selling burs kits with certain characteristics. Plaintiffs also seek an asset restraining order and limited discovery from PayPal. On November 20, 2020, this Court held a hearing on Plaintiffs' motion for a preliminary injunction. While Plaintiffs submitted evidence

1

demonstrating Defendants had received notice of the hearing on the preliminary injunction and confirmed that they were aware of the date of the hearing and that it was being conducted online, Defendants did not attend the hearing or submit any response to Plaintiffs' motion. ECF No. 15-13, PageID.310.

Having reviewed the pleadings, supporting affidavits, and other records submitted in support of the motion, and having carefully considered the arguments made at the hearing, the Court will **GRANT** Plaintiffs' preliminary injunction.

## I.  BACKGROUND

Plaintiff Versah was founded in 2014 and has a license to the exclusive use of the Densah® trademark, which was filed on September 11, 2013 and registered on February 17, 2015 with the U.S. Patent and Trademark Office.[1] ECF No. 1, PageID.8. Beginning in November of 2014, Plaintiff Versah utilized the Densah® trademark on its Densah® Bur Kits. The Densah® Bur Kit is a set of medical tools which help dentists prepare bone for the insertion of dental implants during oral surgery. ECF No. 1, PageID.7.

---

[1] Plaintiff Huwais IP Holding LLC ("HIPH") is the owner of the intellectual property rights at issue in this case, including the registered trademark for "DENSAH." ECF No. 1, PageID.8. While Versah has a license to exclusive use of trademark within the dental field, HIPH retains the rights to the registered trademark.

2

In a Complaint filed together with their motion seeking injunctive relief, Plaintiffs allege that Defendants sell and offer for sale "copycat and counterfeit products in the United States through various websites and online marketplaces like eBay." ECF No. 1, PageID.11. In addition to infringing on the protected tools, their packaging, and the actual Densah® trademark itself, Plaintiffs allege that Defendants' website utilizes identical, or nearly identical, information and images provided in Versah's copyrighted "Instructions for Use" ("IFU"), including explanations and images. ECF No. 1, PageID.13-14. As a result of Defendants' alleged infringement, Plaintiffs contend that the counterfeit kits may cause confusion as to the origin of the counterfeit products and also pose a threat to the health and safety of the public as they are inferior products and fail to comport with requirements imposed by the United States Food Drug and Cosmetic Act. ECF No. 1, PageID.12.

Plaintiffs allege that Defendants' actions constitute: (1) copyright infringement under the Copyright Act; (2) trademark infringement and counterfeiting under § 32 of the Lanham Act; (3) unfair competition and false designation of origin under § 43(a) of the Lanham Act; (4) unfair competition and false designation of origin under § 43(a) of the Lanham Act for trade dress; and (5) unfair competition under Michigan Compiled Laws § 445.903.

On September 29, 2020, Plaintiffs filed an ex parte motion for a temporary restraining order, preliminary injunction, and additional

3

relief. ECF No. 4. After a hearing and the submission of supplemental materials, this Court denied Plaintiffs' motion for a temporary restraining order, but granted service by an alternative means, ECF No. 10, and ordered parties to appear for a hearing on Plaintiffs' motion for preliminary injunction following the successful completion of service of process. While Plaintiffs provide evidence that Defendants were served on October 23, 2020, and had notice of the November 20, 2020 hearing, Defendants did not attend the hearing or submit any opposition to Plaintiffs' motion.

## II. LEGAL STANDARD

"The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). Therefore, a party "is not required to prove his full case at a preliminary injunction hearing." *Id*. In deciding whether to grant a preliminary injunction, the Court must weigh four factors:

(1) whether the movant has a strong likelihood of success on the merits;
(2) whether the movant would suffer irreparable injury absent the injunction;
(3) whether the injunction would cause substantial harm to others; and
(4) whether the public interest would be served by the issuance of an injunction.

*Graveline v. Johnson*, 747 F. App'x 408, 412 (6th Cir. 2018) (quoting *Bays v. City of Fairborn*, 668 F.3d 814, 818–19 (6th Cir. 2012)). These four

4

elements are "factors to be balanced, not prerequisites that must be met." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007) (citations omitted). While it is beneficial for the district court to provide an analysis of all four factors, it is not necessary if fewer factors are dispositive. *Lantech.com v. Yarbrough*, 247 F. App'x 769, 773 (6th Cir. 2007).

## III. ANALYSIS

Plaintiffs seek a preliminary injunction because Defendants continue to sell and offer "sub-par, low quality" counterfeit products, which pose a risk to the health and safety of customers while the use of the Densah® trademark causes brand confusion. They ask the Court to enter a preliminary injunction enjoining Defendants from: (1) using Versah's name, trademarks, or copyrights, including the DENSAH® trademark and the IFU and SILHOUETTE copyrights, in the sale or promotion of any dental burs and bur kits; and (2) selling or offering for sale dental burs and bur kits having a trade dress with a stepped cover, a two-toned cover-base color scheme, holes in the base for receiving the tools, and a product name identification on the base front. Additionally, Plaintiffs request an asset restraining order of the PayPal account connected to hammadashiq@hotmail.com and limited discovery from PayPal to determine if there are other accounts associated with Hammad Ashiq, info@ulamin.com, Zia Ul Amin, or Usman Ul Amin.

Because the Court finds that Plaintiffs have a substantial likelihood of success on the merits, would suffer irreparable harm absent the injunction, and the public interest would be served by the issuance of an injunction, the Court will grant Plaintiffs' motion for a preliminary injunction.

### a. Likelihood of success on the merits

The Court must first determine whether Plaintiffs have established a strong likelihood of success on the merits of its claims. "At the preliminary injunction stage, 'a plaintiff must show more than a mere possibility of success,' but need not 'prove [its] case in full.'" *Ne. Ohio Coal. for the Homeless v. Husted*, 696 F.3d 580, 591 (6th Cir. 2012) (quoting *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.,* 511 F.3d 535, 543 (6th Cir. 2007)).

Plaintiffs' complaint asserts the following causes of action: (1) copyright infringement; (2) trademark infringement and counterfeiting; (3) unfair competition and false designation of origin; and (4) unfair competition and false designation of origin for trade dress. The Court finds Plaintiffs are likely to succeed on the merits on each of these claims.

Under the Copyright Act, the plaintiff must prove two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Enchant Christmas Light Maze & Market Ltd. v. Glowco, LLC*, 958 F.3d 532, 563 (6th Cir. 2020) (quoting *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).

6

The second element, copying of the original elements of work, can be established through direct or indirect evidence. *Id*. If there is no direct evidence of copying, indirect evidence "may establish 'an inference of copying by showing (1) access to the allegedly-infringed work by the defendant(s) and (2) a substantial similarity between the two works at issue.'" *Enchant*, 958 F.3d at 537 (quoting *Kohus v. Mariol*, 328 F.3d 848, 853-54 (6th Cir. 2003)). To determine if works are "substantially similar," the Court must first identify which aspect of the works are protected by copyright and then whether the allegedly infringing works are substantially similar to the protected elements. *Id*.

It is uncontested that Plaintiff is the sole owner of two pertinent copyrights: Registration No. VA 2-203-676 for work titled "BUR SILHOUETTE WITH DEPTH MARKINGS" and Registration No. TX-8-896-578 for work titled "Densah Bur & Versah Guided Surgery System Instructions For Use" ("IFU"). ECF No. 1, PageID.20. Therefore, the key inquiry is whether Defendants copied the material subject to copyright protection. Plaintiffs allege that the top of Defendants' kit contains a diagram which is "strikingly similar" to the art from Registration No. VA 2-203-676 (ECF No. 1, PageID.17) and Defendants' website includes a description and explanation of the product that is nearly a word-for-word duplicate of that which is provided in Versah's copyrighted IFU (ECF No. 1, PageID.13).

7

A comparison of Plaintiffs' copyrighted material with Defendants' alleged infringement shows evidence of copying. ECF No. 1, PageID.15. The diagram of the bur has the exact same measurements marked along in the same units, the description includes verbatim lifting of whole sentences, and the diagram of the protocols appears identical but for a difference in font. ECF No. 1, PageID.15-16. Because Plaintiff was able to show ownership of the copyright and evidence that Defendant copied multiple elements of the copyright-protected material, Plaintiff has shown that it is likely to succeed on the merits of its copyright infringement claims.

For Plaintiffs' next two claims, the Sixth Circuit has held that "[u]nder the Lanham Act, 15 U.S.C. § 1051 et seq., we use the same test to decide whether there has been trademark infringement, unfair competition, or false designation of origin: the likelihood of confusion between the two marks." *Victory Lane Quick Oil Change, Inc. v. Darwich*, 799 F.Supp.2d 730, 735 (E.D. Mich. 2011) (quoting *Audi AG v. D'Amato*, 469 F.3d 534, 542 (6th Cir. 2006)). To show likelihood of success on the merits for the trademark infringement, unfair competition, and false designation of origin claims, Plaintiffs must establish: "(1) it owns the registered trademark; (2) the defendant used the mark in commerce; and (3) the use was likely to cause confusion." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009). Likelihood of confusion is evaluated by balancing the following factors: (1) strength of the plaintiff's mark; (2)

8

relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. *Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 763 (6th Cir. 2005). However, these factors are "simply a guide" and "imply no mathematical precision." *Wynn*, 839 F.2d at 1186. As such, "a plaintiff need not show all, or even most, of the factors listed are present in any particular case to be successful." *Id*.

Here, it is uncontested that Plaintiff HIPH is the owner of U.S. Trademark Registration No. 4,689,471 for the Densah® trademark and that Plaintiff Versah has an exclusive license to use the trademark. ECF No.1, PageID.8. Next, Plaintiffs submit evidence that Defendants utilize the Densah® trademark on the website offering sale of its allegedly counterfeit kits. ECF No. 1, PageID.13; ECF No. 9-12, PageID.161. *See* https://perma.cc/6F9Q-66VP. In addition to continued unauthorized use, Plaintiffs provide as evidence of "confusion" an email from a customer asking if Defendants' allegedly counterfeit kits are made by Plaintiff. ECF No. 9-2, PageID.181. The customer notes the burs "look identical" and "come in the same kit that [Versah] sell[s]." *Id. See Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1188 (6th Cir. 1988) ("Evidence of actual confusion is undoubtedly the best evidence of likelihood of confusion.").

Because Defendants continue to utilize Plaintiffs' mark without permission, and Plaintiffs have shown that such use has caused at least

9

some confusion in the marketplace as to the origin of the allegedly infringing goods, Plaintiffs have established a likelihood of success on the merits of their trademark infringement, unfair competition, and false designation of origin claims.

Finally, Plaintiffs assert a claim of infringement of unregistered trade dress for the packaging utilized in Defendants' bur kits. "To recover for trade dress infringement under § 43(a) of the Lanham Act, a party must first identify what particular elements or attributes comprise the protectable trade dress." *Tumblebus*, 399 F.3d at 768. Next, the party must prove: "1) that the trade dress in question is distinctive in the marketplace, thereby indicating the source of the good it dresses, 2) that the trade dress is primarily nonfunctional, and 3) that the trade dress of the competing good is confusingly similar." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 629 (6th Cir. 2002). As to the first factor, courts have found a mark can be distinctive in two ways: (1) if it is "inherently distinctive," meaning its "intrinsic nature serves to identify a particular source," or (2) "if it is not inherently distinctive, if it has developed secondary meaning, which occurs when, 'in the minds of the public, the primary significance of a [mark] is to identify the source of the product rather than the product itself.'" *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 210-11 (2000) (quoting *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 851, n. 11 (1982)).

10

Plaintiffs have failed to establish a likelihood of success on the merits of their trade dress claim at this stage for several reasons. First, Plaintiffs failed to identify with particularity the discrete elements that make up its trade dress. *See Abercrombie*, 280 F.3d 619, 634 (6th Cir.2002) ("[I]t will not do to solely identify in litigation a combination as 'the trade dress.' Rather, the discrete elements which make up that combination should be separated out and identified in a list."). While Plaintiffs provide a list in the proposed language of the order they submitted to this Court, the motion itself only identifies "similar color relationships, similar shapes, and similar text positioning and color." ECF No. 4, PageID.116. Even if the Court were to accept that the discrete elements were outlined in the proposed order, Plaintiffs have offered no evidence—either in submissions to the Court or during hearings—as to why the packaging of the bur kits is distinctive, primarily nonfunctional, or confusingly similar. Stating in a conclusory manner that the packaging meets the three required elements does not meet the standard of a showing by the preponderance of the evidence a likelihood of success on the merits. *See Tumblebus*, 399 F.3d at 768. Even in evaluating the comparison photo offered by Plaintiffs, this Court is unable to find how certain elements, such as "product name identification on the base front," could be found distinctive.

Given Plaintiffs' failure to provide evidence, the Court finds Plaintiffs have not established a likelihood of success on the merits of

their trade dress claim. While this finding prevents the Court from entering an injunction prohibiting Defendants from selling or offering bur kits having a trade dress with certain characteristics, it does not stand in the way of the Court's granting a preliminary injunction based on Plaintiffs having demonstrated a likelihood of success on their other claims.

In sum, Plaintiffs have shown a likelihood of success on the merits of their copyright infringement, trademark infringement and counterfeiting, and unfair competition and false designation of origin claims, but not their trade dress claim.

### b. Irreparable injury to Plaintiffs absent the injunction

Next, the Court must consider whether Plaintiffs will suffer irreparable injury without the injunction. The Sixth Circuit has held that "where a plaintiff makes a strong showing of likelihood of confusion, irreparable harm follows as a matter of course." *Ford Motor Co. v. Lloyd Design Corp.*, 22 F. App'x 464, 469 (6th Cir. 2001) (referencing *Wynn*, 943 F.2d at 608). Additionally, "[t]he loss of customer goodwill often amounts to irreparable injury because the damages flowing from such losses are difficult to compute." *Basicomputer Corp. v. Scott*, 973 F.2d 507, 512 (6th Cir. 1992).

In addition to the previously discussed confusion, the record contains ample evidence to support a finding that Plaintiffs would suffer competitive injury and loss of customer goodwill from Defendants' alleged

12

infringements. According to the evidence submitted by Plaintiffs, Defendants continue to utilize Plaintiffs' copyright and trademark-protected material on their website and packaging including diagrams, explanations, and images. ECF No. 1, PageID.13-14. Plaintiffs have analyzed the allegedly infringing devices and contend that they are of "grossly inferior quality and poor design." ECF No. 1, PageID.12. The continued use of these materials has, and may continue to, cause confusion for customers of these kits. Such confusion could diminish customer goodwill toward Plaintiffs' brand if customers became dissatisfied with Defendants' bur kits due to their lower quality and poorer design, as to which Plaintiffs have presented uncontroverted evidence.

For these reasons, Plaintiffs have established the threat of irreparable injury.

### c. Substantial harm to others

Third, the Court must consider whether a preliminary injunction would cause substantial harm to Defendants or others. *Ford Motor Co.*, 22 F. App'x at 467. In view of the relief sought, there is a strong likelihood that Defendants will suffer financial harm because a preliminary injunction will require them to cease offering or selling certain bur kits. However, the scope of the financial harm is limited, given that an order enjoining Defendants from using Plaintiffs' trademarks or copyrights does not require them to cease all business operations. Further, the harm

13

to Defendants is finite, whereas if Plaintiffs suffered irreparable harm to its brand because of confusion and customer dissatisfaction, the duration of such loss would be difficult to calculate.

Therefore, even considering the potential financial harm to Defendants, the balance of hardships tilts in favor of the Plaintiffs.

### d. Public interest

Finally, the last factor to evaluate in considering a motion for preliminary injunction is "whether the public interest would be served by issuance of a preliminary injunction." *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000) (quoting *McPherson v. Michigan High School Athletic Ass'n*, 119 F.3d 453, 459 (6th Cir. 1997)).

To support the public interest prong of the preliminary injunction evaluation, Plaintiffs contend that Defendants' kits "pose an immediate threat to American public health and safety due to their inferior quality and poor design." ECF No. 4, PageID.108. In addition to investigating the characteristics of Defendants' allegedly counterfeit kit, Plaintiffs submitted an affidavit of the current Chief Operating Officer of Versah who formerly served as the production control manager in charge of inspecting Versah's products to ensure they met certain quality standards. ECF No. 9-1, PageID.144. The affidavit identifies several defects in Defendants' kit including "gouges in the metal, flaking metal, rough edges, and inconsistent manufacturing." ECF No. 9-1, PageID.149. There is clearly a public interest in preventing counterfeit defective

14

devices from being brought into the market where customers may be confused as to their origin or harmed by their use. *See* ECF No. 9-2, PageID.181 (Customer email noting, "They are made of stainless steel and are laser etched and come in the same kit you sell. Are these the same burs? How can they be available for a fraction of your cost?"). The health and safety concerns are particularly pronounced here where the device at issue is a medical device which is utilized in patients' mouths for a drilling procedure in the jawbone. The public interest weighs in favor of granting a preliminary injunction.

Examined together, the four factors weigh in favor of granting Plaintiffs' motion for a preliminary injunction. In particular, the Court is convinced by the proof in support of a substantial likelihood of success on the merits and the injunction's ability to protect the public interest. While a preliminary injunction may cause financial harm to Defendants, the Court finds on balance that the scale tips in favor of granting Plaintiffs' request for an injunction.

Finally, the Court notes that Defendants have failed to respond to Plaintiffs' motion despite having received notice of it and being given every opportunity to offer evidence or argument in opposition. There is no evidence to weigh against that which Plaintiffs have presented, and for the reasons set out herein, that evidence carries their burden.

### e. Request for Other Relief

In addition to a preliminary injunction, Plaintiffs also request an asset restraining order and an expedited discovery order. For the reasons stated below, the Court will grant this additional relief.

### i. Asset Restraining Order

Plaintiffs request an order restraining Defendants from accessing any assets in the PayPal account associated with hammadashiq@hotmail.com to ensure an accurate accounting of any profits made by selling the allegedly counterfeit goods. Courts have granted such orders to prevent Defendants from transferring or otherwise hiding their financial assets. *See United States SEC v. Bravata*, No. 09-12950, 2009 WL 2245649, *2 (E.D. Mich. Jul. 27, 2009).

In the original motion, Plaintiffs contend an asset restraining order is necessary because they believe Defendants "will attempt to transfer or hide their assets derived from counterfeiting activities." ECF No. 4, PageID.119. While the original motion offered little evidentiary support that Defendants would hide or transfer assets, since the November 20, 2020 hearing on the preliminary injunction, Defendant Hammad Ashiq informed Plaintiffs that he had resigned from Ul Amin Industries and that his PayPal account was "no longer linked with UL AMIN's websites." ECF No. 16-3, PageID.328. Plaintiffs have also submitted supplemental materials alleging that Defendants' website has been restructured and is no longer able to accept online payments. ECF No. 16, PageID.318.

Therefore, in light of the risk that Defendants will attempt to transfer or hide the assets derived from counterfeiting activities, the Court finds that an asset restraining order is necessary to maintain the status quo and preserve Plaintiffs' right to an equitable accounting.

### ii. Limited Expedited Discovery

Plaintiffs also request an order allowing limited early discovery from PayPal to ascertain whether Defendants are operating any other PayPal accounts in association with the alleged counterfeit activities. Under Federal Rule of Civil Procedure 26(d)(1), a party may not typically seek discovery prior to the required Rule 26(f) conference. However, parties may begin discovery before this conference if the court authorizes them to do so upon a showing of good cause. Fed. R. Civ. P. 26(d)(1). In this Circuit, district courts have found good cause for granting expedited discovery when there are allegations of copyright infringement, the identification of Defendants is unknown, the discovery sought is limited in scope, and the discovery would "substantially contribute to moving the case forward." *Arista Records, LLC v. Does 1-4*, No. 1:07-cv-1115, 2007 WL 4178641, *1 (W.D. Mich. Nov. 20, 2007). *See also N. Atlantic Operating Co., Inc. v. JingJing Huang*, 194 F.Supp.3d 634, 637 (E.D. Mich. 2016).

While Plaintiffs have identified one PayPal account connected to Defendants, Plaintiffs wish to serve discovery upon PayPal to determine whether Defendants have any other PayPal accounts which are being

17

utilized to conduct the alleged counterfeit activity. Given the infringement claims at issue in the case, Plaintiffs' difficulty identifying Defendants, the limited scope of the request, and Plaintiffs' failure to thus far respond, this Court finds expedited discovery appropriate to move the case forward.

The Court will grant Plaintiffs' limited expedited discovery to determine if Defendants have other PayPal accounts.

## CONCLUSION

For these reasons, it is hereby **ORDERED** that Plaintiffs' Motion for a preliminary injunction is **GRANTED**. Defendants and their agents, directors, members, servants, employees, successors, assigns, and all other persons in active concert or participation with them, are enjoined from using Plaintiffs' name, trademarks, or copyrights, including the DENSAH® trademark and the IFU and SILHOUETTE copyrights, in the sale or promotion of any dental burs and bur kits.

It is further **ORDERED** that PayPal shall within five (5) days after actual notice of this Order, provide to Plaintiffs expedited discovery, including copies of all documents and records in such entity's possession or control relating to any and all known domain names and financial accounts associated with Hammad Ashiq, info@ulamin.com, Zia Ul Amin, and Usman Ul Amin.

It is further **ORDERED** that PayPal, shall, within twenty-four (24) hours after actual notice of this Order freeze all access of each and every

Defendant to any and all of their accounts associated with the unauthorized sale of bur kits products, by temporarily disabling these accounts and making them inactive and non-transferable pending further order from this Court.

**IT IS SO ORDERED**.

Dated: December 9, 2020  s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE