UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **VERSAH, LLC ET AL.**, <br><br> Plaintiffs, <br><br> v. <br><br> **UL AMIN INDUSTRIES ET AL.**, <br><br> Defendants. | 2:20-cv-12657-TGB-RSW <br><br> HON. TERRENCE G. BERG <br><br> **ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT (ECF NO. 28) AND DENYING AS MOOT DEFENDANT HAMMAD ASHIQ'S MOTION TO DISMISS (ECF NO. 31), PLAINTIFFS' MOTION TO STRIKE (ECF NO. 31) AND DEFENDANT'S MOTION TO ALLOW PAYPAL USE (ECF NO. 39)** |

Plaintiffs Versah, LLC and Huwais IP Holding LLC, the owner of the trademarks and exclusive license of Densah® Bur Kits, medical devices used to prepare teeth for surgical intervention, brought an action against Defendants UL Amin Industries and Hammad Ashiq, whom they allege are engaged in manufacturing, distributing, or selling counterfeit Densah® Bur Kits. *See* ECF No. 1, PageID.13. On December 9, 2020, this Court granted Plaintiffs' motion for preliminary injunction, which prevented Defendants from using Plaintiffs' name, trademarks, or copyrights, and froze any PayPal accounts connected to Defendants and

accounts associated with the sale of bur kits. ECF No. 18. Subsequently, on February 10, 2021, the Court denied Defendants' motion to unfreeze the PayPal accounts. ECF No. 30. The Court also stayed the proceedings in the case for 30 days to allow Defendant UL Amin to retain counsel, with the explicit warning that if by the expiration of the 30 days "no attorney has entered an appearance on behalf of UL Amin, Plaintiffs may proceed with the process of seeking a default judgment against UL Amin." ECF No. 30, PageID.629. The 30-day time period elapsed several months ago, but Defendant UL Amin has not retained counsel.

Currently pending before this Court are Plaintiffs' Motion for Default Judgment as to All Defendants (ECF No. 28), Defendant Hammad Ashiq's Pro Se Motion to Dismiss (ECF No. 31), Plaintiffs' Motion to Strike (ECF No. 37), and Defendant's Pro Se Motion to Allow Hammad Ashiq and Family to Use PayPal (ECF No. 39). The Court has reviewed the papers and pleadings in this matter and finds that the relevant facts and laws are adequately outlined. The motions will therefore be decided on the papers submitted without oral argument.

## I.     BACKGROUND

The Complaint in the case was originally filed on September 29, 2020, and then amended on December 15, 2020. ECF No. 1, 20. After both Defendants failed to file an answer or otherwise plead, on January 20, 2021, the clerk of the court made an entry of default as to both UL Amin and Hammad Ashiq. *See* ECF No. 26, 27. Plaintiffs then filed a motion

for default judgment as to all Defendants on February 5, 2021. ECF No. 28. Defendant Hammad Ashiq filed a timely response to the motion for default judgment on February 8, 2021 (ECF No. 29), and also filed a motion to dismiss on February 26, 2021 (ECF No. 31).

Plaintiffs now seek an entry of default judgment against Defendants UL Amin and Hammad Ashiq. Additionally, Plaintiffs seek a permanent injunction.

## II.    MOTION FOR DEFAULT JUDGMENT

Summons were issued for both Defendants on September 30, 2020. ECF Nos. 5, 6. Pursuant to this Court's Order, Plaintiffs served a copy of the Complaint, Summons, and Order via email to Defendant Hammad Ashiq and Defendant UL Amin using read receipts as instructed by the Court. ECF No. 10. According to the declaration of Alex Szypa, counsel of record for the Plaintiffs, on October 24, 2020, Plaintiffs received an email from Defendant Hammad Ashiq acknowledging receipt of the Complaint, Summons, and Order. ECF No. 12, PageID.261. The amended Complaint was then served via email to both Defendants on December 15, 2020. A clerk's entry of default was entered against both Defendants in this case on January 20, 2021. ECF Nos. 26, 27.

### a. Legal Standard

Under Rule 55(a) of the Federal Rules of Civil Procedure, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or

otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). To obtain a judgment by default, the plaintiff must first request the clerk's entry of default pursuant to Rule 55(a). Once the clerk has entered a default, all of the plaintiff's well-pleaded allegations are deemed admitted. *Ford Motor Co. v. Cross*, 441 F.Supp.2d 837, 846 (E.D. Mich. 2006).

If the plaintiff's claim is not for a sum that can "be made certain by computation," the party must apply to the court for a default judgment pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 55(b)(1); Fed. R. Civ. P. 55(b)(2). While not required, courts may also conduct hearings when they would help determine whether to enter and how to effectuate judgment. Fed. R. Civ. P. 55(b)(2*). See Ford Motor Co.*, 441 F. Supp.2d at 848 ("Fed. R. Civ. P. 55 does not require a presentation of evidence as a prerequisite to the entry of a default judgment, although it empowers the court to conduct such hearings as it deems necessary and proper to enable it to enter judgment or carry it into effect.").

Judgment by default is considered "a drastic step which should be resorted to only in the most extreme cases," and when assessing whether the judgment should be entered, "the district judge is required to exercise sound judicial discretion." *United Coin Meter Co., Inc. v. Seaboard Coastline R.R.*, 705 F.2d 839, 845 (6th Cir. 1983); Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 2685 (4th ed.

2019). To determine whether entry of default judgment is appropriate, courts may consider a number of factors, including: "the amount of money potentially involved; whether material issues of fact or issues of substantial public importance are at issue; whether the default is largely technical; whether plaintiff has been substantially prejudiced by the delay involved; and whether the grounds for default are clearly established or are in doubt." Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 2685 (4th ed. 2019). Once a default is entered against a defendant, "the well pleaded factual allegations in the Complaint, except those relating to damages, are taken as true." *Ford Motor Co.*, 441 F. Supp. 2d at 848 (referencing *Thomson v. Wooster*, 114 U.S. 104 (1885); *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110–11 (6th Cir.1995)).

### b. Appearance or Notice Requirement

The Court first turns to the motion for default judgment against Defendant UL Amin. As outlined in this Court's previous order, Defendant UL Amin—as a corporation—may not be represented by a non-attorney or defend itself pro se. *See Bischoff v. Waldorf*, 660 F.Supp.2d 815, 820 ("The Sixth Circuit has held that a corporation must appear by counsel or not at all.") (referencing *Ginger v. Cohn*, 426 F.2d 1385, 1386 (6th Cir. 1970)). In view of this rule, the Court clearly and fairly warned Defendant UL Amin that it must obtain counsel or face default. *See* ECF No. 30, PageID.629. Despite this warning and a 30-day

stay of the case to allow Defendant UL Amin to hire an attorney, Defendant UL Amin failed to obtain counsel to defend this matter. As a result of this failure, Defendant UL Amin has not properly appeared or filed any answer, response, or other papers in this matter. Any papers filed by Defendant Hammad Ashiq do not constitute a proper defense or pleading by Defendant UL Amin because, as explained above, a corporation must "appear by counsel or not at all," and Mr. Ashiq is not an attorney. *Bischoff*, 660 F.Supp.2d at 820. In sum, Defendant UL Amin has failed to properly plead or defend because it did not obtain counsel to represent itself.

Next, the Court turns to Defendant Hammad Ashiq. As an individual, Mr. Ashiq may proceed pro se. However, while a pro se litigant's pleadings must be construed liberally, "this less stringent standard does not excuse a pro se litigant's failure to comply with mandatory, clear procedural deadlines." *Rice v. Wayne Cty. Treasurer*, No. 13-cv-12456, 2014 WL 3400716, at *2 (E.D. Mich. July 11, 2014) (*referencing Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996)). The key question then is whether Mr. Ashiq properly defended against the complaint in compliance with the Federal Rules of Civil Procedure.

A defendant may properly defend against a complaint "as required by Fed. R. Civ. P. 55(a) in ways other than filing an answer, such as by filing a motion to dismiss for failure to state a claim." *Phelps v. American Gen. Fin. Serv.*, Case No. 08-CV-10552, 2008 WL 3978318, *3 (E.D. Mich.

Aug. 22, 2008). Pursuant to Federal Rule of Civil Procedure 12(a)(1), Defendant Ashiq was required to serve a responsive pleading "within 20 days after being served with the summons and complaint." Fed.R.Civ.P. 12(a)(1)(A). Plaintiffs filed and served an Amended Complaint on December 15, 2020, which gave Mr. Ashiq 20 days from that date to properly defend against the complaint. ECF No. 20. Mr. Ashiq failed to file an answer or other responsive pleading by January 4, 2020, and as such, Plaintiffs properly requested the Clerk's entry of default which was entered on January 20, 2021. ECF Nos. 25-27.

Eventually, Defendant Ashiq did file a motion to dismiss—on February 26, 2021—but, the motion came 73 days after Plaintiffs' served the Amended Complaint, 37 days after the Clerk's entry of default against Defendant Ashiq, and was filed during the Court-ordered 30-day stay. ECF No. 30. Therefore, the motion to dismiss was untimely.

In sum, neither Defendant UL Amin nor Hammad Ashiq properly defended against the Complaint.

### c. Factors Guiding Court's Discretion

The Court's discretion in determining whether default judgment is appropriate is guided by the following factors: (1) possible prejudice to the Plaintiff; (2) the merits of the Plaintiff's claim; (3) the sufficiency of the complaint; (4) the amount of money at stake; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules

of Civil Procedure favoring decisions on the merits. *See Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986); *see also Marshall v. Bowles*, 92 F. App'x 283, 285 (6th Cir. 2004) (citing *Eitel* and addressing factors (1)-(4)).

Applying the preceding factors, the Court concludes that default judgment is appropriate in this case. First, the original Complaint in this case was filed on September 29, 2020: Defendants have been provided multiple opportunities and an extensive amount of time to respond, defend, or obtain counsel and have failed to do so. Defendants have also failed to appear for two hearings, both of which were held using the international Zoom Webinar technology. ECF Nos. 8, 14. All together, these actions have prolonged this litigation. Meanwhile, Plaintiffs have invested significant resources in litigating this case: preparing for two hearings, submitting multiple filings to this Court, and keeping the Court apprised of their efforts to contact and communicate with Defendants. Accordingly, the Court finds that the first factor—potential prejudice to Plaintiff—weighs in favor of entry of a default judgment.

Both the second and third factors also support entry of a default judgment. As previously outlined in this Court's orders, this case involves medical devices utilized in oral surgery to prepare bone for the insertion of dental implants and the allegedly "sub-par, low quality" counterfeit products pose a serious risk to the health and safety of customers. *See* ECF No. 20, PageID.407; *See* ECF No. 18, PageID.388 ("The health and safety concerns are particularly pronounced here where the device at

issue is a medical device which is utilized in patients' mouths for a drilling procedure in the jawbone."). These allegations are well-supported by diagrams, photos, customer emails, and affidavits from Versah's Chief Operating Officer examiner—formerly the production control manager— outlining the alleged defects in Defendants' kits. *See* ECF No. 9-1, PageID.149 (Noting "gouges in the metal, flaking metal, rough edges, and inconsistent manufacturing."). As highlighted in the previous section, these factual allegations are taken as true because Defendants are in default. *See Cross*, 441 F. Supp. At 848.

The remaining factors also weigh in favor of entering default judgment. Rather than actual damages, Plaintiffs are seeking statutory damages and entry of a permanent injunction. The record before the Court is not only undisputed, but robust. And Defendants, despite stays and additional guidance from the Court, were unable to mount a defense against Plaintiff's claims and made no effort to do so until well after the clerk's entry of default. While the Court acknowledges that public policy favors the resolution of cases on the merits, Defendants have squandered opportunities for merits-based resolution with their failure to respond and failure to obtain counsel.

Accordingly, because Defendant UL Amin and Hammad Ashiq have failed to plead or defend, and their defaults have been entered by the Clerk, the Court must accept all well pleaded factual allegations in the

Amended Complaint as true. *Stooksbury v. Ross*, 528 Fed.Appx. 547, 551 (6th Cir. 2013).

## III.   SUFFICIENCY OF ALLEGATIONS

The Court finds that the well pleaded factual allegations in the Amended Complaint are sufficient to support a finding of liability as to (1) copyright infringement in violation of the Copyright Act, (2) trademark infringement in violation of the Lanham Act, (3) unfair competition in violation of the Lanham Act, (4) unfair competition under Mich. Comp. Laws § 445.903, and (5) patent infringement. *See Ford Motor Co.*, 441 F. Supp. 2d at 848 ("If those allegations are sufficient to support a finding of liability as to each defendant on the claims . . . the Court should enter judgment."). The Court also finds the factual allegations in the Complaint are insufficient to support a finding of liability as to the trade dress infringement claim. Each claim will be addressed in turn.

### a. Copyright Infringement

To demonstrate copyright infringement under the Copyright Act, a plaintiff must establish "(1) ownership of a valid copyright, and (2) the fact 'that the defendant copied protectable elements of the work.'" *RJ Control Consultants, Inc. v. Multiject, LLC*, 981 F.3d 446, 454 (6th Cir. 2020) (quoting *Lexmark Int'l., Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 534 (6th Cir. 2004)). A plaintiff may establish an inference of copying by showing that (1) "defendant had access to the work," and (2)

"that the original and allegedly infringing work are *substantially* similar." *Parker v. Winwood*, 938 F.3d 833, 836 (6th Cir. 2019) (emphasis in original). However, "even when a plaintiff is unable to prove access, she can establish copying by showing a '*striking* similarity' between her work and the allegedly infringing one." *Id.* (quoting *Murray Hill Publ'ns, Inc. v. Twentieth Century Fox Film Corp.*, 361 F.3d 312, 317 (6th Cir. 2004) (emphasis in original quotation).

Here, it is undisputed that Plaintiff Versah is the owner of two valid copyrights: (1) BUR SILHOUETTE WITH DEPTH MARKINGS (U.S. Copyright Registration No. VA 2-203-676), and (2) Densah Bur and Versah Guided Surgery System Instructions for Use (U.S. Copyright Registration No. TX 8-896-578). *See* ECF No. 20, PageID.400. Both copyrights are publicly available—the Silhouette in the interior lid of the Bur Kits and the Instructions for Use on Plaintiff Versah's website. ECF No. 20, PageID.400-01. Despite Plaintiffs' objections, the record demonstrates that Defendants utilized several original elements of these copyrights on both their website and product packaging. Defendants' website uses the original image from Plaintiffs' copyrighted Instructions For Use on their website to illustrate their counterfeit product. *See* ECF No. 20, PageID.408, 411. Defendants also utilize a nearly identical image of Versah's copyrighted Bur Silhouette. *See* ECF No. 20, PageID.410. In addition to the shape of the illustrated Bur being substantially indistinguishable, the depth markings and their associated numerical

values are identical. Even the key on the bottom right of the illustration, which states "Units in mm," is identical. Accordingly, because Plaintiffs have established that there is a "striking similarity" between their copyrighted material and Defendants' allegedly infringing items, a finding of copyright infringement is warranted.

### b. Trademark Infringement and Unfair Competition

Under the Lanham Act, courts "use the same test to decide whether there has been trademark infringement, unfair competition, or false designation of origin." *Audi AG v. D'Amato*, 469 F.3d 534, 542 (6th Cir. 2006). The basis of this test is "the likelihood of confusion between the two marks." *Id*.

"A party proves trademark infringement by showing (1) that it owns a trademark, (2) that the infringer used the mark in commerce without authorization, and (3) that the use of the alleged infringing trademark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties." *Coach, Inc. v. Goodfellow*, 717 F.3d 498, 502 (6th Cir. 2013) (internal quotations and citations omitted). Courts consider eight factors when analyzing whether there is a likelihood of confusion: "(1) strength of the plaintiff's mark; (2) relatedness of the goods or services; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) defendant's intent in selecting the mark; and (8) likelihood of

expansion of the product lines or services." *AWGI, LLC v. Atlas Trucking Co., LLC*, 998 F.3d 258, 264–65 (6th Cir. 2021)

The first two elements are easily satisfied: It is undisputed that Plaintiff Huwais IP Holding is the owner of the "DENSAH" trademark (U.S. Trademark Registration No. 4,689,471) and that Defendants utilized the mark on its website where it offered bur kits for sale. ECF No. 20, PageID.402, 417. Many of the eight factors weigh in favor of the third element being established because Defendants have in fact used the literal "Densah®" mark. This no doubt establishes the strength, relatedness, and similarity elements. Additionally, the record includes evidence from consumers gathered by Plaintiffs showing confusion as to the difference and legitimacy of the trademark and counterfeit kits. *See* ECF No. 9-2, PageID.181. For these reasons, Plaintiffs have sufficiently demonstrated all three elements of trademark infringement and have also shown unfair competition.

### c. Trade Dress Infringement

"In order to prevail on a claim for trade dress infringement based on a product's design, a plaintiff must show that its design is (1) nonfunctional, (2) has acquired a secondary meaning, and (3) is confusingly similar to the allegedly infringing design." *Leapers, Inc. v. SMTS, LLC*, 879 F.3d 731, 735 (6th Cir. 2018). Plaintiffs assert that the trade dress in question includes a "stepped covered, a two-tone cover-base color scheme, holes in the base for receiving the tools, and a product name

identification on the base front." ECF No. 28, PageID.602. As to the first element, a showing that the design is "nonfunctional," Plaintiffs' Amended Complaint fails to provide allege sufficient facts to meet this element. The Court is unable to identify anywhere in the pleadings, for example, factual information regarding the non-functionality of the "holes in the base for receiving the tools" or the step cover. *See Leapers, Inc. v. SMTS, LLC*, 879 F.3d 731, 737 (6th Cir. 2018) ("Aesthetic intent alone is also insufficient because some products function based on their aesthetic properties through so-called "aesthetic functionality."). There are also no factual materials which establish that the two-tone cover-base color scheme or the product name on the base front have acquired a "secondary meaning." *See Inwood Lab'ys, Inc. v. Ives Lab'ys, Inc.*, 456 U.S. 844, 851, n. 11 (1982) ("To establish secondary meaning, a manufacturer must show that, in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product itself.").

For these reasons, the Court concludes that Plaintiffs' allegations in the Amended Complaint are insufficient to support entry of a default judgment on the trade dress claim.

### d. Unfair Competition under § 445.903

The Michigan Consumer Protection Act prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices, in the conduct or trade or commerce. Mich. Comp. Laws § 445.903(1). Here, there are a

variety of factual allegations that establish there was a "probability of confusion" as to the source of the counterfeit bur kits. *See* ECF No. 9-2, PageID.181. Additionally, Plaintiffs outline factual allegations that "Defendants have made false and misleading statements to U.S. Customs services by declaring its Osseodensification Burs Kits to be 'Steel Tools Kit' rather than Class 1 medical devices," and that Defendants falsely claim various certifications. ECF No. 20, PageID.406-07. *See* Mich. Comp. Laws § 445.903(1)(c) ("Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has sponsorship, approval, status, affiliation, or connection that he or she does not have."). Plaintiffs have also provided testimony and factual allegations that the Defendants' bur kits are of an inferior quality and FDA non-compliant. ECF No. 20, PageID.412-13. *See* Mich. Comp. Laws § 445.903(1)(e) (Deceptive methods include "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.").

Therefore, because Plaintiffs' factual allegations are sufficient to establish that Defendants engaged in multiple deceptive or unfair practices, the Court will grant default judgment as to Plaintiffs' claims under Mich. Comp. Laws Ann. § 445.903.

### e. Patent Infringement

A determination of patent infringement requires the courts to (1) determine the meaning of the patent's claims, and (2) compare the patent's claims to the allegedly infringing device. *Zen Design Grp., Ltd. v. Clint*, No. 08-CV-14309, 2009 WL 4050247, at *4 (E.D. Mich. Nov. 23, 2009). "A device infringes a patent claim if it contains every limitation set forth in that claim, either literally or by equivalence." *Id.*

It is undisputed that Plaintiff Huwais IP Holding is the owner of the "Autografting Osteotome" patent (U.S. Patent No. 10,039,621) and Versah is the exclusive licensee of the patent for the dental field of use. ECF No. 20, PageID.405. Plaintiffs provide a variety of factual allegations, pictures, and diagrams, that break down each component of the patent. In fact, attached to Plaintiffs' Amended Complaint is a chart which outlines each claim and draws comparison to Defendants' product. *See* ECF No. 20-8. For example, claim 4 in the patent consists of a "rotary osteotome," which has "at least one lip" and is "offset" from another pair of lips, such that the two "do not lie within a common plane." *See* ECF No. 20-8, PageID.531. As shown in the accompanying picture of Defendants' product, Defendants' rotary osteotome contains the virtually identical limitations regarding the two offset lips as is outlined Plaintiffs' patent product. *Id.* Taking as true the well-pleaded allegations in the Amended Complaint, most notably the exhibit found at ECF No. 20-8, the Court finds that there is an infringement of at least one claim in the

patent. *See Zen Design Grp., Ltd.*, 2009 WL 4050247, at *4 ("A finding of infringement of one claim in the patent is sufficient for a finding of patent infringement."). Therefore, Plaintiffs are entitled to default judgment on its claim of patent infringement.

To summarize the Court's findings regarding whether the record supports entry of default judgment as to the claims in the Amended Complaint, the Court grants default judgment as to Plaintiffs' claims for (1) copyright infringement in violation of the Copyright Act, (2) trademark infringement in violation of the Lanham Act, (3) unfair competition in violation of the Lanham Act, (4) unfair competition under Mich. Comp. Laws § 445.903, and (5) patent infringement. However, because the factual allegations are insufficient as to the claim for trade dress infringement, the Court denies Plaintiffs' request for default judgment on that claim.

## IV. Remedies

Plaintiffs have requested both a permanent injunction against Defendants as well as statutory damages pursuant to the Lanham Act. ECF No. 28, PageID.586. Specifically, Plaintiffs request that any dollar amounts in Defendants' frozen PayPal accounts be released to Defendants up to the damages amount. *Id*. The Court addresses each request in turn.

### a. Permanent Injunction

Plaintiffs request this Court convert its preliminary injunction against Defendants into a permanent injunction, and add permanent injunctive relief related to the trade dress infringement and patent infringement claims. ECF No. 28, PageID.607.

Traditionally, the Court applies a four-part test when considering whether permanent injunctive relief is appropriate, including in patent cases. See *Zen Design Grp.*, 2009 WL 4050247, at *4; *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). The four elements plaintiff must establish include: (1) the plaintiff has suffered an irreparable injury, (2) remedies available at law are insufficient to compensate for the injury, (3) when balancing the hardships between the plaintiff and defendant, a remedy in equity is warranted, and (4) the public interest would be served by a permanent injunction. *Id*.

Here, the Court finds that a permanent injunction is an appropriate remedy to respond to Defendants' infringements—except as to the claim for trade dress infringement because the Court found the factual allegations insufficient to grant default judgment as to this claim. As discussed above, Defendants' infringement is likely to result in confusion and loss of customer goodwill if Defendants continue to utilize Plaintiffs' copyrighted and trademark-protected materials. *See Lucky's Detroit, LLC v. Double L, Inc.*, 533 F. App'x 553, 555 (6th Cir. 2013) ("In trademark infringement cases, a likelihood of confusion or possible risk

to the requesting party's reputation satisfies the irreparable injury requirement."). Plaintiffs clearly suffered and would continue to suffer irreparable harm if consumers continued to purchase Defendants' counterfeit items, rather than the those lawfully sold by Plaintiffs. *See Audi AG v. D'Amato*, 469 F.3d 534, 550 (6th Cir. 2006); *Malibu Media, LLC v. Schelling*, 31 F. Supp. 3d 910, 912 (E.D. Mich. 2014) (internal citations omitted) ("The issuance of such an injunction is in the Court's discretion, but "permanent injunctions are typically granted in situations involving unlawful infringement of copyrights in ... compositions 'because of the strong probability that unlawful performances of other copyrighted material will occur.'"). The second element is also easily established. Here, an award of money damages would be inadequate as Defendants' failure to participate in these proceedings has prevented Plaintiffs from conducting discovery to determine the extent of damages it could recover. Additionally, harm to reputation and consumer confusion are injuries which are difficult to compensate with monetary damages. *See Nedschroef Detroit Corp. v. Bemas Enterprises LLC*, 106 F. Supp. 3d 874, 890 (E.D. Mich. 2015) (Noting that "loss of goodwill and competitive market position" are "injuries which courts have recognized cannot be fully compensable by monetary damages.").

As to the third element, Defendants can claim no hardship in refraining from copyright and trademark infringement, activities prohibited by law, compared with Plaintiffs' facing consumer confusion,

loss of sales, and potential harm to their reputation. *See Audi AG*, 469 F.3d at 550. The balance of hardships undoubtedly weighs in Plaintiffs' favor. *See Lucky's Detroit, LLC v. Double L Inc.*, No. 09-14622, 2012 WL 1658455, at *3 (E.D. Mich. May 11, 2012) ("The balance of hardship caused to either party weighs in favor of Defendant because any hardship experienced by Plaintiff is merely the result of complying with applicable federal laws."). Finally, it is also clear that the public interest would be served by a permanent injunction because the bur kits are medical devices, and counterfeit versions could pose a threat to individuals' health and safety due to their "inferior quality and poor design." ECF No. 4, PageID.108. Protecting the public from the defects identified by Plaintiffs' former production control manager, including flaking metal and rough edges, clearly supports the public interest prong of the test. An injunction would prevent these defective devices from entering the market under circumstances where customers could be confused by their origin and potentially harmed by their use. Accordingly, injunctive relief is warranted.

### b. Statutory Damages

In addition to a permanent injunction, Plaintiffs also request an award of statutory damages in the amount of $100,000 under the Lanham Act. The Lanham Act's statutory damages provision allows a trademark owner to "elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under

subsection (a), an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services."15 U.S.C. § 1117(c). *See also Lorillard Tobacco Co. v. Van Dyke Liquor Mkt., Inc.*, 471 F. Supp. 2d 822, 833 (E.D. Mich. 2007). Specifically, a court may award a minimum of $1,000 or maximum of $200,000 per counterfeit mark. 15 U.S.C. § 1117(c)(1)). These damages are available "regardless of willfulness," but a plaintiff may pursue enhanced damages—up to $2,000,000 per mark—if the "use of the counterfeit mark is determined to be willful." *Atmos Nation, LLC v. Kashat*, No. 5:14-CV-11019, 2014 WL 2711961, at *4 (E.D. Mich. June 16, 2014). The Court, in determining the proper amount of an award of statutory damages, is only constrained by what is considered "just." *Id.* (referencing 15 U.S.C. § 1117(c)).

The Court finds that an award of $50,000 for the single infringed mark is appropriate. In evaluating what constitutes a just award, the Court considers several factors. *See Bestway Inflatables & Material Corp. v. Doe 1-10*, No. 20-CV-12002, 2021 WL 755483, at *1 (E.D. Mich. Jan. 7, 2021) (assessing "(1) the expenses saved and profits reaped, (2) revenues lost by plaintiff, (3) value of the copyright, (4) deterrent effect on others besides the defendant, (5) whether the defendant's conduct was innocent or willful, (6) whether defendant cooperated in providing records from which to assess the value of the infringing material, and (7) the potential for discouraging the defendant."). First, there is no genuine dispute that

Defendants infringed upon Plaintiffs' copyrights and trademarks. Despite notification by Plaintiffs through a cease and desist letter, Defendants continued to display Plaintiffs' trademark on their website where they advertised counterfeit goods. The continued utilization of these copyrights after notification by Plaintiffs can hardly be said to constitute innocent use, but instead represents a flagrant disregard of copyright. *See Ford Motor Co.*, 441 F. Supp. 2d at 852 (E.D. Mich. 2006) (finding statutory damages were appropriate where the defendants "continued to maintain their infringing domain name registration and to operate their unauthorized and infringing website displaying counterfeits" of the plaintiff's trademark).

Additionally, part of the purpose of statutory damages is to deter the wrong doer from future infringement, not only to provide compensation to the copyright owner. *See Johnson v. Jones*, 149 F.3d 494, 504 (6th Cir. 1998) (internal citations omitted).[1] The Court finds the

---

[1] The *Johnson* case cites to Justice Jackson's decision in *F.W. Woolworth v. Contemporary Arts*, 344 U.S. 228, 233 (1952), which noted that "[t]he statutory rule, formulated after long experience, not merely compels restitution of profit and reparation for injury but also is designed to discourage wrongful conduct." However, it must be noted that the quotation that the Sixth Circuit in *Johnson* identifies as originating in the *Woolworth* decision is nowhere to be found in the actual language of that opinion. That quoted phrase:

> Statutory damages are designed not solely to compensate the copyright owner for losses incurred, but also to deter future infringement,

award of $50,000 is particularly just because the products at issue were medical devices. Defendants' counterfeit use of the marks was for items that would be utilized to conduct surgical intervention and counterfeit versions could pose a threat to individuals' health and safety due to their inferior design. The medical risks posed by products using counterfeit marks requires the Court to consider statutory damages which provide a deterrent effect not only to Defendants, but to others who may contemplate committing such dangerous violations in the future.

Statutory damages are particularly appropriate here because the posture of this case precludes actual damages. *See Microsoft Corp. v. McGee*, 490 F. Supp. 2d 874, 882 (S.D. Ohio 2007) ("Several courts have found statutory damages are appropriate in default judgment cases because the information needed to prove actual damages is within the infringers' control and is not disclosed."). Defendants' lack of cooperation in this case precluded the parties from conducting discovery which would have yielded evidence to allow the Court to assess the value of the infringing material.

Accordingly, Plaintiffs are to be awarded $50,000 in statutory damages on its trademark infringement claim. To enforce this award, the

---

found in *Johnson*, 149 F.3d at 504, and unfortunately in many other reported decisions regarding statutory damages under the Copyright Act, is a correct paraphrase of the rule announced in the *Woolworth* case, but it is not a verbatim quote and should not be so cited.

Court exercises its discretion to order the release the amounts in the frozen PayPal account associated with hammadashiq@gmail.com to Plaintiff, up to the statutory damages amount of $50,000. *See Bestway Inflatables & Material Corp*, 2021 WL 755483, at *2.

## CONCLUSION

For the reasons outlined above, Plaintiff's Motion for Default Judgment (ECF No. 28) is **GRANTED IN PART**. Default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2) is granted against Defendants on the claims for (1) copyright infringement in violation of the Copyright Act, (2) trademark infringement in violation of the Lanham Act, (3) unfair competition in violation of the Lanham Act, (4) unfair competition under Mich. Comp. Laws § 445.903, and (5) patent infringement. Default judgment on Plaintiffs' claim for trade dress infringement is **DENIED,** and that claim will be **DISMISSED**.

Defendants and their agents, directors, members, servants, employees, successors, assigns, and all other persons in active concert or participation with them, are **PERMANENTLY ENJOINED** from using Plaintiffs' name, trademarks, copyrights, or patents, including the DENSAH® trademark and the copyrights (1) BUR SILHOUETTE WITH DEPTH MARKINGS (U.S. Copyright Registration No. VA 2-203-676), and (2) Densah Bur and Versah Guided Surgery System Instructions for Use (U.S. Copyright Registration No. TX 8-896-578), in the sale or promotion of any dental burs and bur kits.

It is further **ORDERED AND ADJUDGED** that Plaintiffs may recover statutory damages in the amount of $50,000 under the Lanham Act (15 U.S.C. 1117(c)).

It is further **ORDERED AND ADJUDGED** that 30 days following entry of this Order, PayPal is ordered to release any funds in the PayPal account associated with the email hammadashiq@hotmail.com to be utilized to satisfy the Default Judgment.

It is further **ORDERED AND ADJUDGED** that Defendant Hammad Ashiq's Motion to Dismiss (ECF No. 31), Plaintiffs' Motion to Strike (ECF No. 37), and Defendant's Motion to Allow Hammad Ashiq and Family to Use PayPal (ECF No. 39) are **DENIED AS MOOT**.

Judgment may be entered for Plaintiffs on Counts I, II, III, V, and VI of the Amended Complaint.  Count IV of the Complaint is hereby **DISMISSED** without prejudice.

**SO ORDERED.**

Dated: August 31, 2021       s/Terrence G. Berg
                             TERRENCE G. BERG
                             UNITED STATES DISTRICT JUDGE